951 So.2d 247 (2006)
VARTECH SYSTEMS, INC.
v.
Todd HAYDEN, Peter Newman, Joel Tedder, and Deepsouth Hardware Solutions, L.L.C.
No. 2005 CA 2499.
Court of Appeal of Louisiana, First Circuit.
December 20, 2006.
*251 W. Steven Mannear, Poynter, Mannear & Colomb, Baton Rouge, for Plaintiff-Appellee VarTech Systems, Inc.
H. Michael Bush, D. Scott Landry, Chaffe McCall, L.L.P., New Orleans, for Defendants-Appellants Todd Hayden, Peter Newman, Joel Tedder, and DeepSouth Hardware Solutions, L.L.C.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
The defendants appeal from a trial court judgment granting a preliminary injunction in favor of the former employer of the individual defendants, based in part on a non-competition agreement and a non-disclosure agreement signed by each of them. For the following reasons, the judgment is reversed in part and affirmed in part.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Todd D. Hayden (Hayden), Peter G. Newman (Newman), and Joel D. Tedder *252 (Tedder) were formerly employed by VarTech Systems, Inc. (VarTech). While working for VarTech, each signed a "Non-competition Agreement" containing the following five provisions: (1) agreement not to compete; (2) agreement not to solicit customers; (3) consent to equitable relief; (4) savings clause; and (5) binding effect/controlling law and venue clause. Execution of the agreement by Hayden occurred on January 14, 2000, by Newman on June 12, 2000, and by Tedder on July 25, 2001. Hayden, Newman, and Tedder also signed a "Non-Disclosure Agreement." Hayden and Newman left their employment with VarTech in March 2005 and April 2005, respectively, and on May 11, 2005, they formed DeepSouth Hardware Solutions, L.L.C. (DeepSouth). When Tedder left VarTech's employment in May 2005, he went to work for DeepSouth the next day, and the following month became vice president of the business.[1]
VarTech filed a petition for injunctive relief and damages against Hayden, Newman, Tedder, and DeepSouth (collectively, defendants) seeking to restrain and enjoin them from operating their business. The nature of VarTech's business was identified in the petition, and allegedly included sales, servicing, and repair of computers and related hardware, as well as providing training, technical services, and consulting concerning computer systems and software. The petition alleged that Hayden, Newman, and Tedder were in direct competition with VarTech, in violation of their non-competition agreements. The petition further alleged that Hayden, Newman, and Tedder took with them when they left project worksheets containing client information and contacted VarTech's customers, making negative and defamatory remarks about VarTech. VarTech sought damages for defamation and for violations of the non-compete and non-solicitation clauses of the non-competition agreements, of the Louisiana Unfair Trade Practices Act, and of the Louisiana Trade Secrets Act. A temporary restraining order was issued in favor of VarTech on July 5, 2005, and was renewed on July 14, 2005, pending a determination of VarTech's request for a preliminary injunction.
The defendants opposed VarTech's application for preliminary injunctive relief on several grounds. They claimed the non-compete agreements were invalid as a matter of law, in that the non-compete clause contained an overly broad description of VarTech's business, contained an overly broad geographical restriction, and prohibited Hayden, Newman, and Tedder from taking any job with a competitor of VarTech. In addition, the non-solicitation clause in the non-competition agreements failed to specify any geographical limitation. Finally, they argued that VarTech had not shown that it would suffer irreparable injury absent injunctive relief, and beyond its mere allegations, had not demonstrated that there was a substantial likelihood that it would succeed on the merits of any of its claims.
Hayden, Newman, Tedder, and Carlton Wayne Prater (Prater), who was VarTech's president and chairman, testified at the hearing on the request for a preliminary injunction. Although only the original agreements signed by Newman were introduced at the hearing, Prater testified that Hayden and Tedder had also signed similar non-competition agreements and non-disclosure agreements.[2]
*253 After taking the matter under advisement, the trial court reformed the noncompete clause and found that the non-competition agreement, as thus reformed, was valid and enforceable against the defendants. The trial court granted VarTech's request for a preliminary injunction, enjoining Hayden, Newman, Tedder, and DeepSouth (and their agents, officers, or employees) from competing with VarTech in the business of the corporation. Based on the description in the petition and the non-compete clause of the non-competition agreement, the trial court defined the business of VarTech to include the following: (1) the buying, selling, trading, exchanging, repairing and/or servicing of new and used mainframe computer systems (such as those made by Harris Corporation, Landis & Gyr, or Telegyr), flat panel displays, industrial displays, minisystems or personal computer systems inclusive of all related peripherals whether sold, repaired, or transferred in the form of complete systems or individual components, (2) the selling of computer-related training classes accessed via the internet, (3) the selling of technical services related to the implementation, repair, or servicing of computer hardware, and (4) the selling of consulting services related to the development of software, whether created to meet specific criteria for a specialized application or simply modifications of existing software rendered to address customer preferences or needs. The defendants were enjoined from doing any of these activities in all 64 parishes in Louisiana for a period of two years from the dates of their departure from VarTech.
Additionally, pursuant to the non-solicitation clause of the non-competition agreements, Hayden, Newman, Tedder, and DeepSouth (their agents, officers, and employees) were enjoined from (1) soliciting any customers of VarTech for a period of two years following the dates of the termination of their employment and (2) soliciting, diverting, or appropriating to themselves or to a competing business, or attempting to solicit, divert, or appropriate to themselves or to any competing business, any person or entity whose account with VarTech was sold or serviced by Hayden, Newman, or Tedder during their previous employment by VarTech. In accordance with the non-disclosure agreements, the defendants were also enjoined from disclosing any confidential information that had been disclosed to them or of which they had become aware while employed at VarTech, including, but not limited to: (1) the business operations or internal structures of VarTech, (2) the identities of customers of the corporation, (3) past, present, or future research done by VarTech respecting the business or operations of the corporation, or customers or potential customers of the corporation, or (4) releasing any method or procedure relating or pertaining to projects developed by VarTech or contemplated by VarTech to be developed. In connection with VarTech's claim for defamation, the defendants were enjoined from making any untrue, disparaging, or false comments or remarks concerning VarTech to any person.
From the judgment granting VarTech's request for a preliminary injunction, Hayden, Newman, Tedder, and DeepSouth appealed, urging that the non-compete and non-solicitation clauses were void and unenforceable *254 as a matter of law and that the trial court erred in reforming the non-compete clause and, after applying the savings clause, finding the non-compete clause to be enforceable. The defendants argue that the non-compete clause was geographically overly broad and did not accurately describe VarTech's business, which was much more limited in scope. Furthermore, they claim that the absence of any geographical restriction in the non-solicitation clause rendered it null and void. Additionally, the defendants urge that VarTech failed to produce facts sufficient to show that it had any likelihood of succeeding on its claim for breach of the non-competition agreement or for defamation, so as to warrant the issuance of a preliminary injunction.[3]

ANALYSIS
Law Applicable to Non-competition Agreements
Over the years, Louisiana has had a strong public policy disfavoring non-competition agreements between employers and employees. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294, 298. This public policy is expressed in LSA-R.S. 23:921(A)(1), which at the time pertinent to this matter provided:[4]
Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
Louisiana's strong public policy restricting non-competition agreements is based on an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden.[5]See McAlpine v. McAlpine, 94-1594 (La.9/5/96), 679 So.2d 85, 91. Because such agreements are in derogation of the common right, they must be strictly construed against the party seeking their enforcement. SWAT 24, 808 So.2d at 298.
The exceptions to LSA-R.S. 23:921(A)(1) set forth in the statute include employer/employee relationships, corporation/shareholder relationships, partnership/partner relationships, and franchise/franchisee relationships. The statute *255 defines the limited circumstances under which a non-competition clause may be valid in the context of each of these relationships. Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 00-1954 (La. App. 1st Cir.9/28/01), 809 So.2d 405, 410, writs denied, 01-3316 (La.3/8/02), 811 So.2d 883, and 01-3355 (La.3/8/02), 811 So.2d 886. The exception at issue in the case before us is provided by subsection C, which at the time pertinent to the matter stated, in pertinent part:
Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
LSA-R.S. 23:921(C) is an exception to Louisiana public policy against non-compete agreements and as such, must be strictly construed. See Kimball, 809 So.2d at 411.
Preliminary Injunctive Relief
Generally, a party seeking the issuance of a preliminary injunction[6] must show that he will suffer irreparable injury[7] if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case.[8]Jurisich v. Jenkins, 97-1870 (La.App. 1st Cir.9/25/98), 722 So.2d 1008, 1011, reversed on other grounds, 99-0076 (La.10/19/99), 749 So.2d 597. However, in the event an employee enters into an agreement with his employer not to compete, pursuant to LSA-R.S. 23:921, and fails to perform his obligation under such an agreement, the court shall order injunctive relief even without a showing of irreparable harm, upon proof by the employer of the employee's breach of the non-compete agreement. See Clear Channel Broadcasting, Inc. v. Brown, 04-0133 (La. App. 4th Cir.3/30/05), 901 So.2d 553, 557; see also LSA-R.S. 23:921(H), formerly LSA-R.S. 23:921(G).
In determining whether the employer has met his burden of proof, the courts have been called on to consider the validity and enforceability of the agreement sought to be enforced by the employer. See SWAT 24, 808 So.2d 294; Clear Channel, 901 So.2d at 558; Kimball, 809 So.2d 405. Even though LSA-R.S. 23:921 mandates the court to issue injunctive relief upon proof of the obligor's failure to perform, without the necessity of proving irreparable injury, the employer must still establish that it is entitled to relief. See Clear Channel, 901 So.2d at 558. Where the actions sought to be enjoined pursuant *256 to a non-compete agreement do not fall within the exception found in LSA-R.S. 23:921(C) or where the non-compete agreement is found to be unenforceable for failure to conform to LSA-R.S. 23:921, the employer is unable to establish that it is entitled to the relief sought. See SWAT 24, 808 So.2d at 307; Clear Channel, 901 So.2d at 556-58; Kimball, 809 So.2d at 411-12.
Typically, a trial court enjoys considerable discretion in determining whether a preliminary injunction is warranted. See State through Louisiana State Bd. of Examiners of Psychologists of the Dep't of Health and Human Services v. Atterberry, 95-0391 (La.App. 1st Cir.11/9/95), 664 So.2d 1216, 1220. The trial court's issuance of a preliminary injunction will not be disturbed on appeal absent a clear abuse of discretion. Sorrento Companies, Inc. v. Honeywell Int'l, Inc., 04-1884 (La.App. 1st Cir.9/23/05), 916 So.2d 1156, 1163, writ denied, 05-2326 (La.3/17/06), 925 So.2d 541.
Carrying on or Engaging in a Business Similar to that of the Employer
The phrase "carrying on or engaging in a business similar to that of the employer" means carrying on or engaging in the employee's own business similar to that of the employer.[9]SWAT 24, 808 So.2d at 307. Thus, an agreement that restrains an employee from carrying on or engaging in a competing business as the employee of another does not fall within the exception provided for by LSA-R.S. 23:921(C) and would be null and void, pursuant to subsection (A). SWAT 24, 808 So.2d at 306.
The ex-employee defendant in SWAT 24 did not form his own business to compete with SWAT. Rather, he accepted an employment position with SWAT's competitor. Finding that the applicable provision went beyond the limited exception of section 921(C) by preventing the defendant's employment in specified parishes in any capacity with any other business in direct or indirect competition with SWAT, the court found that such provision was unenforceable. SWAT 24, 808 So.2d at 308.
Nonetheless, the supreme court examined the impact of the overly broad language on the validity of the entire non-compete agreement. Recognizing that, pursuant to a severability clause (sometimes also called a "savings clause"), the court in AMCOM of Louisiana, Inc. v. Battson, 96-0319 (La.3/29/96), 670 So.2d 1223, had allowed a trial court's reformation of overly broad language, the court in SWAT 24 found that the severability clause in SWAT's agreement made it possible to excise the offending language from the non-competition clause without doing undue damage to the remainder of the agreement. SWAT 24, 808 So.2d at 308-09.[10] Thus, the court refused to declare the agreement a nullity in its entirety. Rather, it concluded that the overly broad *257 language, which was null and void, could be severed from the agreement. Id. at 309. Once the offending portion of the agreement had been stricken, however, the court found there was nothing in the remaining language of the agreement that could be construed to prohibit the conduct of which SWAT complained, as its ex-employee had not formed his own business to compete with SWAT. See Id.[11]
The pertinent language in the non-compete clause in the VarTech agreements executed by Hayden, Newman, and Tedder provided:
[Y]ou shall not (except with the prior written consent of VarTech Systems Inc.), engage in the business of the Corporation for yourself or others, either directly or indirectly[.]
The defendants urge that VarTech's inclusion of the phrase "or others" exceeded the limited exception of LSA-R.S. 23:921(C), thus rendering the non-compete clauses null and void as a matter of law. The defendants assert that it is irrelevant that the facts of the matter before us seemingly fit into what was enforceable under the substantive law. They propose that the non-compete clauses are either enforceable or not, regardless of the actual facts.
We disagree. Indeed, the scope of the prohibition in the VarTech non-compete clause exceeded the exception provided by LSA-R.S. 23:921(C), in that it purported to preclude Hayden, Newman, and Tedder's employment in any capacity with a competitor of VarTech. Accordingly, the language at issue went beyond that which is allowed by the statute. See SWAT 24, 808 So.2d at 307-08. Nonetheless, the non-competition agreements also contained a "Savings Clause" which provided:
To the extent that any provision or portion to this agreement shall be held, found, or deemed to be unreasonable, unlawful, or unenforceable, then any such provision or portion thereof shall be modified to the extent necessary to be legally enforceable to the fullest extent permitted by applicable law. You hereby expressly authorize any court of competent jurisdiction to enforce any such provision or any portion thereof to make any such modification.
This language, like the severability clause in SWAT 24, makes it possible to excise the offending language from the non-compete clause without doing undue damage to the remainder of the provision. Thus, we conclude that the trial court did not err as a matter of law in severing the null clause from the agreements. Without the offending language, the agreements validly restricted Hayden, Newman, and Tedder from carrying on or engaging in their own competing business, which fits within the limited exception in LSA-R.S. 23:921(C). Under the facts of this case, their activities fell within that prohibition, and the non-compete clause, as reformed, was potentially enforceable. However, we must also consider whether other provisions of LSA-R.S. 23:921 might yet invalidate the Var-Tech non-compete agreement.
Geographical Limitation of the Non-Compete Agreement
Section 921(C) provides that a non-compete agreement must specify the parish(es) or municipality(ies) in which the *258 employer operates.[12] The trial court found that the non-compete agreements in question specified the parishes to which it would apply. Nonetheless, the defendants urged that the geographical restriction in the non-compete agreement was overly broad.
A non-compete agreement must specifically name the parishes or municipalities in which the agreement is to have effect. See Turner Professional Services, Ltd. v. Broussard, 99-2838 (La.App. 1st Cir.5/12/00), 762 So.2d 184, 186, writ denied, 00-1717 (La.9/29/00), 770 So.2d 356.[13] What is important is that the geographic limitation be express and clearly discernable. Hose Specialty & Supply Mgmt. Co., Inc. v. Guccione, 03-823 (La. App. 5th Cir.12/30/03), 865 So.2d 183, 194. The VarTech agreements specifically listed all 64 parishes in the state as those to which the agreements apply. However, the statute contemplates that the parishes specified in the agreement must be parishes where the ex-employer actually has a location or customers. Employers are not permitted to lock former employees out of markets in which the employer does not operate. See Cellular One, Inc. v. Boyd, 94-1783 (La.App. 1st Cir.3/3/95), 653 So.2d 30, 33, writ denied, 95-1367 (La.9/15/95), 660 So.2d 449.
The VarTech non-compete clauses specified the parishes to which they would apply as required by the statute. The listing of all 64 parishes does not automatically render the specification overly broad. See Hose Specialty, 865 So.2d at 188-89, 194. The defendants asserted this specification was overly broad, in that it included parishes in which VarTech did not do business, but they failed to offer any proof to show that the specification made by VarTech in its agreements was invalid. According to the defendants' argument, VarTech's only place of business in Louisiana is in East Baton Rouge Parish. Although Hayden, Newman, and Tedder were questioned about their contacts with a few of VarTech's customers, no evidence was offered to establish where VarTech actually had a location or had customers. Like the fifth circuit in the Hose Specialty case, in the absence of such evidence in connection with VarTech's request for a preliminary injunction, we find no error in the trial court's enforcement of the geographic bounds stated in the agreements. See Id.[14]
Defining of Employer's Business
Section 921 does not require a definition of an employer's business for the *259 agreement to be valid. Baton Rouge Computer Sales, Inc. v. Miller-Conrad, 99-1200 (La.App. 1st Cir.5/23/00), 767 So.2d 763, 764. However, if the agreement contains a definition of the employer's business, it cannot be overly broad, such that it prevents former employees from engaging in more activities than were performed for the former employer. Baton Rouge Computer Sales, Inc., 767 So.2d at 765.[15] None of the cases decided after SWAT 24 have addressed the issue of whether a severability or savings clause in a non-competition agreement can be used to reform an overly broad definition of the ex-employer's business.
The business of VarTech was defined in the non-compete clauses as including, but not limited to:
the buying, selling, trading, exchanging, repairing and/or servicing of new and used mainframe computer systems (such as those made by Harris Corporation, Landis & Gyr or Telegyr), flat panel displays, industrial displays, mini-systems or personal computer systems inclusive of all components; the selling of computer related training classes accessed via the internet; the selling of technical services related to the implementation, repairing or servicing of computer hardware; and the selling of consulting services related to the development of software, whether created to meet specific criteria of a specialized application or simply modifications of existing software rendered to address customer preferences or needs.
The trial court found that the non-compete clauses adequately described VarTech's business. The defendants disputed this finding, urging that the definition of VarTech's business is overly broad, in that the non-compete clauses attempted to improperly restrain Hayden, Newman, and Tedder from engaging in a far broader spectrum of business than VarTech itself actually performed.
According to Tedder, while working as a sales manager for VarTech, he called on customers, generating sales of industrial LCD displays, CRT displays, and military-grade type displays. While employed by VarTech, Hayden sold Westinghouse control systems, along with many other types of equipment. Hayden testified that VarTech provided many types of "fringe services." At Hayden's request, Prater authorized Hayden and Newman to handle most of the sales of Westinghouse and Bailey products while at VarTech. According to Hayden, this authorization was granted, because that phase of VarTech's business differed from that involved with the manufacturing and repairing of industrial monitors that were primarily being handled by other VarTech workers.
In the fall of 2004, Hayden assisted VarTech in bringing a large quantity of Westinghouse inventory to its new location. According to Hayden, he was the driving force for VarTech's purchase and sale of Westinghouse inventory. Hayden left VarTech because Prater had led him to believe that VarTech intended to focus on the sales and repairs of industrial monitors manufactured by it, and did not intend to continue the Westinghouse business after the existing inventory had been sold. He believed that in his absence, VarTech would not have anyone to go out and buy Westinghouse inventory and assist with *260 sales, thus, that phase of VarTech's business would fade away. Hayden was admittedly performing these same functions for DeepSouth.
Prater testified that although VarTech had not purchased any more Westinghouse hardware since Hayden's departure in February 2005, it still maintained an inventory of these products and continued to sell and actively solicit this type of equipment. Prater explained that VarTech still sold Westinghouse control systems and Bailey equipment. During the thirteen months prior to the hearing on VarTech's request for a preliminary injunction, VarTech had sold $439,000 in Westinghouse equipment, $90,000 in Bailey equipment, and $76,000 of Landis & Gyr equipment.
After considering this testimony, we are unable to conclude that the trial court erred in failing to find that the defendants showed that the definition of VarTech's business was overly broad, so as to raise a question as to the enforceability of the non-compete clause.
Non-Solicitation Agreements
A non-solicitation agreement is separate and apart from a non-compete agreement. The requirements of LSA-R.S. 23:921 apply to non-solicitation agreements, as well as non-compete agreements. Creative Risk Controls, Inc. v. Brechtel, 01-1150 (La.App. 5th Cir.4/29/03), 847 So.2d 20, 25, writ denied, 03-1769 (La.10/10/03), 855 So.2d 353. Thus, to be valid, a non-solicitation agreement must also meet the requirements of LSA-R.S. 23:921.
The defendants contended that the non-solicitation clauses are unenforceable, in that they are missing a geographical restriction of any kind.[16] The defendants cite Kimball, where this court declined to reform a non-compete clause that did not include the specified parish or municipality for non-competition, even though the geographical limits for the non-compete clause could be inferred from other provisions of the agreement in which the non-compete clause appeared. See Kimball, 809 So.2d at 412.
Section 921(C) requires that the restricted parish or parishes, municipality or municipalities, or parts thereof be "specified." When this requirement is combined with the principle of strictly construing exceptions to the longstanding public policy of this state disfavoring agreements not to compete, we are obligated to find that the non-solicitation clauses at issue in this case are unenforceable, because they failed to conform to LSA-R.S. 23:921(C).[17]See Id. While geographical limits may be inferred from the limits of the non-compete clauses in the non-competition agreements, we decline to reform the non-solicitation clauses pursuant to the savings clauses in favor of VarTech. See Id. at 411-12; see also Aon Risk Services of Louisiana, Inc. v. Ryan, 01-0614 (La.App. 4th Cir.1/23/02), 807 So.2d 1058, 1060-62; Water Processing Technologies, Inc. v. Ridgeway, 618 So.2d 533, 536 (La.App. 4th Cir.1993). Because LSA-R.S. 23:921 requires specificity regarding geographical limitations, the non-solicitation *261 clauses must be able to stand on their own.
Preliminary Injunction
The non-compete clauses at hand, as reformed, are prima facie valid noncompete agreements. The testimony established that Hayden, Newman, and Tedder left the employ of VarTech and started their own company, which was in direct competition with some aspects of VarTech's business. The defendants acknowledged that DeepSouth's main business is the same as a portion of VarTech's business that was formerly conducted by Hayden and Newman. Based on this evidence, we are unable to find error in the trial court's apparent finding that VarTech satisfied its burden of a prima facie showing that it was substantially likely to succeed in proving that the defendants breached the terms of the non-compete clauses. Accordingly, based on the trial court's finding, VarTech was entitled to a preliminary injunction prohibiting the defendants from carrying on or engaging in a business similar to that of VarTech in all 64 parishes of this state.[18]
Although the evidence reasonably supports the trial court's finding that Hayden, Newman, and Tedder were soliciting business from customers with whom they had dealt during their employment with VarTech, our finding that the non-solicitation clauses were invalid precludes the enforcement of these clauses. Accordingly, the trial court's enforcement of the non-solicitation clauses by issuance of a preliminary injunction was improper.
Defamation
In addition to enjoining the defendants from competing against VarTech and soliciting VarTech customers, the trial court enjoined the defendants from making any untrue, disparaging, or false comments or remarks concerning VarTech to any person. The defendants denied ever making such statements, and there was no evidence of such conduct at the hearing on the preliminary injunction. Therefore, the defendants contend it was improper for the trial court to preliminarily enjoin them from engaging in such conduct, in light of VarTech's failure to submit proof that they had made any untrue or defamatory statements about VarTech.
To succeed in a defamation action, the plaintiff must prove defamatory words, publication, falsity, malice (actual or implied), and resulting injury. Clark v. Wilcox, 04-2254 (La.App. 1st Cir.12/22/05), 928 So.2d 104, 111, writ denied, 06-0185 (La.6/2/06), 929 So.2d 1252. If even one of these elements is absent, the cause of action fails. Kosmitis v. Bailey, 28,585 (La. App. 2nd Cir.12/20/96), 685 So.2d 1177, 1180.
Courts are generally reluctant to issue an injunction to restrain torts such as defamation or harassment. Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83, 86 (1969), cert. denied, 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); Lassalle v. Daniels, 96-0176 (La.App. 1st Cir.5/10/96), 673 So.2d 704, 709, writ denied, 96-1463 (La.9/20/96), 679 So.2d 435, cert. denied, 519 U.S. 1117, 117 S.Ct. 963, 136 L.Ed.2d 848 (1997). An injunction is a harsh, drastic, and extraordinary remedy and is only issued where the plaintiff is threatened with irreparable loss or injury without an adequate remedy at law.[19] Irreparable injury is considered to be a loss sustained by an injured party which cannot be adequately *262 compensated in money damages or for which such damages cannot be measured by a pecuniary standard. Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981); Lassalle, 673 So.2d at 709. To justify a preliminary injunction, the applicant must establish the likelihood of irreparable injury by clear and convincing evidence. Lighthouse Life Ins. Co., Inc. v. Rich, 343 So.2d 444, 446 (La.App. 3rd Cir.1977).
We conclude that we must reverse the injunction as to VarTech's claim for defamation, because should such activities occur, it would have an adequate remedy at law, i.e., a civil action in tort for damages. Indeed, even if the defendants' words were defamatory, an injunction would not be a proper remedy. See Lassalle, 673 So.2d at 709. Furthermore, a claim for loss of income does not justify injunctive relief.[20] Although such damages may be difficult to calculate, they can be measured by pecuniary standards and compensated in money. See Musser v. Mercy Acad., 389 So.2d 76, 78 (La.App. 4th Cir.1980). VarTech's opportunity to recover compensatory damages affords it an adequate remedy at law in tort, which may be pursued in seeking redress, should any such injuries be established. See Prakasam v. Popowski, 566 So.2d 189, 191-92 (La.App. 2nd Cir.), writ denied, 569 So.2d 986 (La.1990).
Moreover, the evidence offered at the hearing failed to show each element necessary to prevail in a defamation action. Hayden testified that he communicated his reasons for leaving VarTech to a third party,[21] but denied stating that VarTech was no longer selling or supporting Westinghouse equipment. Hayden denied telling a co-worker's spouse that VarTech was going under. His testimony was not contradicted by other evidence offered by VarTech.
After reviewing the record, we conclude the trial court abused its discretion in granting the preliminary injunction relative to the making of untrue, disparaging, or false comments or remarks concerning VarTech, since VarTech failed to present evidence sufficient to make out a prima facie case as to its claim for defamation and did not show that it would suffer irreparable injury if injunctive relief were not granted.[22]

DECREE
For the foregoing reasons, the following portion of the trial court judgment is reversed:
IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that VarTech Systems Inc. is granted a Preliminary Injunction restraining, enjoining, and prohibiting Todd Hayden, Peter Newman, Joel Tedder, and Deepsouth Hardware Solutions, L.L.C., their agents, officers, or employees from soliciting any customers of VarTech Systems Inc. for a period of *263 two years following the date of the termination of their employment, and restraining, enjoining, and prohibiting them from soliciting, diverting, or appropriating to themselves, or to a competing business, or to attempt to solicit, divert, or appropriate to themselves or to any competing business, any person or entity whose account with VarTech Systems Inc. was sold or serviced by Todd Hayden, Peter Newman, or Joel Tedder during their previous employment by VarTech Systems Inc.,. . . . Todd Hayden, Peter Newman, Joel Tedder, and Deepsouth Hardware Solutions, L.L.C., and their agents, officers, or employees are further restrained, enjoined, and prohibited from making any untrue, disparaging, or false comments or remarks concerning VarTech Systems Inc. to any person.
Accordingly, the preliminary injunction relative to VarTech's enforcement of the non-solicitation clauses and its claim for defamation is vacated. Otherwise, the remainder of the judgment granting the preliminary injunction is affirmed. Costs of this appeal are assessed seventy-five percent to VarTech and twenty-five percent to the defendants.
REVERSED AND VACATED IN PART AND AFFIRMED IN PART.
NOTES
[1] Tedder testified that he, Harden, and Newman were the owners of DeepSouth.
[2] Pursuant to a motion to supplement the records, VarTech also provided the trial court with the agreements that had been executed by Tedder. We note also that copies of the non-competition agreements signed by Hayden, Newman, and Tedder were attached to affidavits they filed in the record. The parties stipulated that, in addition to their in-court testimony, Hayden, Newman, and Tedder would each testify in accord with their statements in the affidavits that were presented to the court.
[3] The defendants claimed they had not ever violated, nor did they intend to violate, the non-disclosure agreements; they did not assign error to that portion of the trial court judgment pertaining to the non-disclosure agreements. Thus, we render no opinion as to the propriety of the trial court's granting of the preliminary injunction relative to those agreements.
[4] Subsection D (formerly subsection H) relating to a former employee who becomes employed by a competing business was added to LSA-R.S. 23:921 by 2003 La. Acts, No. 428, § 1. Since the addition of this subsection resulted in a substantive change in the law, it has prospective application only. Clear Channel Broadcasting, Inc. v. Brown, 04-0133 (La. App. 4th Cir.3/30/05), 901 So.2d 553, 556-57; Hose Specialty & Supply Mgmt. Co., Inc. v. Guccione, 03-823 (La.App. 5th Cir.12/30/03), 865 So.2d 183, 193 n. 1. The agreements in question were executed by Hayden, Newman, and Tedder prior to the effective date of this revision. Therefore, this case will be governed by the provisions of the statute that were in effect at the time of the execution of the agreements, which are the same provisions of LSA-R.S. 23:921 that were applicable in SWAT 24. See Louisiana Smoked Products, Inc. v. Savoie's Sausage & Food Products, Inc., 96-1716 (La.7/1/97), 696 So.2d 1373, 1377-78.
[5] Additionally, the basic premise underlying the prohibition stems from the fundamental right of individuals to seek success in our free-enterprise society. Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 00-1954 (La. App. 1st Cir.9/28/01), 809 So.2d 405, 411 n. 9, writs denied, 01-3316 (La.3/8/02), 811 So.2d 883, and 01-3355 (La.3/8/02), 811 So.2d 886.
[6] A preliminary injunction may be granted pending a trial on the merits of a permanent injunction in order to preserve the pre-existing status of the parties. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall, 04-0211 (La.3/18/04), 867 So.2d 651, 655.
[7] Generally, irreparable injury means that the party seeking the preliminary injunction cannot be adequately compensated in money damages for its injury or suffers injuries which cannot be measured by pecuniary standards. Shaw v. Hingle, 94-1579 (La.1/17/95), 648 So.2d 903, 905.
[8] In making a prima facie showing, the plaintiff is required to offer less proof than is necessary in an ordinary proceeding for permanent injunction. State through Louisiana State Bd. of Examiners of Psychologists of the Dep't of Health and Human Services v. Atterberry, 95-0391 (La.App. 1st Cir.11/9/95), 664 So.2d 1216, 1220.
[9] SWAT 24 allows the enforcement of non-competition and non-solicitation agreements when the ex-employee operates a business on his own in competition with his ex-employer. See John Jay Esthetic Salon, Inc. v. Preskitt, 04-1378 (La.App. 4th Cir.2/23/05), 898 So.2d 538, 541, writ denied, 05-1109 (La.6/24/05), 904 So.2d 743.
[10] Prior to SWAT 24, Louisiana courts had allowed reformation of non-compete agreements that were overly broad, but only those that were unreasonable as to territory or time. See Turner Prof. Services, Ltd. v. Broussard, 99-2838 (La.App. 1st Cir.5/12/00), 762 So.2d 184, 185-86, writ denied, 00-1717 (La.9/29/00), 770 So.2d 356; Allied Bruce Terminix Companies, Inc. v. Ferrier, 93-0561 (La. App. 1st Cir.3/11/94), 634 So.2d 44, 45. The decision in SWAT 24 indicates a more expansive use of severability or savings clauses to reform and enforce non-compete agreements.
[11] Following SWAT 24, the court in Hose Specialty, 865 So.2d at 193, similarly found that since the ex-employee had not started his own business, but was working as an employee of a competing business, the contractual language prohibiting his employment in any capacity with any other business similar to that conducted by his former employer was overly broad and unenforceable.
[12] In particular, section 921(C) provides that an employee may agree with his employer not to compete within a specified parish(es) or municipality(ies) "so long as the employer carries on a like business therein."
[13] The agreement in Turner sought to prevent the defendant from competing with or soliciting customers of the plaintiff within the state of Louisiana, without specifying parishes or municipalities in which the plaintiff operated. Although the defendant's testimony showed that the plaintiff operated in only nine parishes, this court refused to reform the contract, since the agreement did not contain a severability or savings clause. Therefore, the agreement was not enforceable. Turner, 762 So.2d at 186.
[14] We note also that a finding that the non-compete clauses in question contained an invalid overly broad geographic limitation would not automatically render the non-compete clauses unenforceable in this case, as the savings clause in the non-competition agreements could be used to strike portions of the non-compete clauses which were overly broad and make the geographic limitation conform to those parishes where VarTech actually has a location or customers. See Kimball, 809 So.2d at 413, citing AMCOM of Louisiana, Inc., 670 So.2d 1223. Such evidence could still be introduced at a hearing seeking a permanent injunction.
[15] The employer is only entitled to keep ex-employees from competing with the employer's actual business, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any segment of the ex-employer's industry. See Baton Rouge Computer Sales, Inc., 767 So.2d at 765.
[16] The non-solicitation clauses do not include any listing of parishes or municipalities in which Hayden, Newman, and Tedder were supposed to refrain from soliciting VarTech's customers.
[17] Although the court in Petroleum Helicopters, Inc. v. Untereker, 98-1816 (La.App. 3rd Cir.3/31/99), 731 So.2d 965, writ denied, 99-1739 (La.8/5/99), 747 So.2d 40, approved a non-compete clause where the affected parishes were identifiable, although not specified, in the clause, this court declined to follow Petroleum Helicopters, Inc. in Turner Professional Services, Ltd., 762 So.2d at 186. Kimball, 809 So.2d at 412-13.
[18] We note, however, that the defendants claimed in their affidavits that all of DeepSouth's customers were located outside the state of Louisiana.
[19] See LSA-C.C.P. arts. 3601, 3602.
[20] The granting of injunctive relief is merely an interlocutory judgment calculated to prevent a party from suffering irreparable injury pending a final determination on the merits of its rights, and in such cases, to generally maintain and preserve the existing status pending a trial or a hearing on the ultimate issues. Haughton Elevator Div. v. State, through the Div. of Admin., 367 So.2d 1161, 1169 n. 6 (La.1979).
[21] Hayden testified that he left VarTech because there were many indications that the Westinghouse business did not have a future at VarTech, and he thought this could be a "niche" business for DeepSouth.
[22] VarTech still has the right to obtain money damages, after a trial on the merits, if it can provide sufficient evidence to prove damages were actually incurred. In addition to damages, the remedy of a permanent injunction is also available after a trial on the merits.