KUHN, J.
 

 1 .Plaintiffs, J4H, L.L.C. (“J4H”), Just 4 Him Houma, L.L.C., and Just 4 Him, L.L.C. (“Just 4 Him”), appeal the trial court’s judgment, which denied their motion for a preliminary injunction to prohibit defendants, Misty Zeringue Derouen and Making the Kut, L.L.C., from competing with plaintiffs’ hair salons in accordance with the terms of a noncompetition agreement. We affirm.
 

 I. PROCEDURAL AND FACTUAL BACKGROUND
 

 Tica Sevin formed Just 4 Him, L.L.C., a male-themed hair salon in Lockport, Louisiana, in December 2005. The salon catered to male clients seeking walk-in salon services. Due to its success, a second salon was opened six months later in Hou-ma, Louisiana, at 632 Corporate Drive.
 
 *12
 
 Thereafter, J4H was formed to franchise additional Just 4 Him salons. Tica and her husband, Kevin, are owners of J4H, which owns the salon located in Houma,
 

 Ms. Derouen graduated from cosmetology school in 2001. She began working for Just 4 Him on March 26, 2007, after she and the Sevins reached a verbal agreement regarding the hours she would work, and they agreed she would receive 50 percent of the amount charged for the services she performed.
 
 [2]
 
 She did not pay any additional amount to the salon to rent a “chair” or “booth;” the percentage of her earnings paid to the salon was her “rent.” Just 4 Him provided hair dryers and Paul Mitchell products for her use, but she provided her own scissors. Just 4 Him and/or J4H paid Ms. Derouen weekly; she kept all of her tips; |3and no social security or income taxes were withheld from her pay.
 
 [3]
 
 Ms. Derouen primarily cut hair at the Houma salon, but she occasionally worked in other Just 4 Him. salon locations. For at least part of the time that she worked for Just 4 Him, she was a manager who trained new stylists, and she traveled to new salons as they opened to help with trainings.
 

 On June 6, 2007, Ms. Derouen signed an “Operating Manual,” a six-page document that outlined various operating procedures for Just 4 Him. It included provisions addressing vacation time and an “end of the year bonus,” and it contained the following paragraph relevant to plaintiffs’ request for injunctive relief:
 

 [B]y Louisiana law, clients are property of [Just 4 Him] and [J4H].... You may not take any trademark property of ■ [Just 4 Him] or [J4H] upon termination of employment. Trademark property includes using the name Just 4 Him, Just 4 Him Haircut Lounge or Just 4 Him Men’s Haircut Lounge. Trademark property also refers to any and all concepts regarding the Just 4 Him Ham-cut Lounge or [J4H] including but not limiting [sic] to a sports themed or male themed salon. Stylists are entered into a non compete clause with [Just 4 Him] and or [J4H] and may not compete with any of the afore named establishments within Lafourche and or Terrebonne Parish for 2 years from date of termination.
 

 On July 10, 2009, the Sevins held a meeting with the Just 4 Him ham stylists. Mr. Sevin testified that the Just 4 Him salon located at 632 Corporate Drive was about to relocate to Martin Luther King Blvd., and he had been hearing complaints from his stylists. He called all of the hair stylists together for a meeting, wherein he told them that the salon would have extended hours on Saturday, and he discussed other business matters pertaining to the relocation.. Mr. |4Sevin further testified that he instructed his stylists that if they could comply with his directives, they could return the next day and continue working for Just 4 Him. He testified that all of the stylists returned the next day, except Ms. Derouen. Just 4 Him moved to its new Martin Luther King Blvd. location, and on August 17, 2009, Ms Derouen opened her own male-themed hair salon, Making the Kut, L.L.C. (“Making the Kut”), in the same business suite that Just 4 Him’s salon had previously occupied at 632 Corporate Drive.
 

 On October 6, 2009, plaintiffs filed a petition seeking injunctive relief and damages, wherein plaintiffs alleged that Ms.
 
 *13
 
 Derouen “worked as an independent contractor cutting hair in ... [plaintiffs’ salons] while primarily working out of the salon located at 632 Corporate Drive .... ” and was “an independent contractor employed by [J4H] to act as a trainer for that business.” Plaintiffs further alleged that Making the Kut was directly competing with plaintiffs and using the same business model and training methods used by Just 4 Him. Plaintiffs sought damages for losses resulting from defendants’ competition and injunctive relief to enforce the terms of the noncompetition agreement.
 

 The trial court issued an order directing defendants to show cause at a November 10, 2009 hearing why a preliminary injunction should not issue prohibiting them from competing with plaintiffs and why the terms of the noncompetition agreement should not be enforced. On November 30, 2009, the trial court signed a judgment denying plaintiffs’ motion for a preliminary injunction and ordering plaintiffs to bear all costs of the matter. In oral reasons for judgment, the trial court found, in pertinent part, as follows:
 

 [Ms. Derouen] ... was certainly an independent contractor. I don’t think there is any doubt about that.... And as a result of that, we’re | .¡required to look at the statute to see what has to happen for an independent contractor [to enforce a noncompetition agreement] .... There’s a distinct difference ... between the treatment of an employee and the treatment of an independent contractor....
 

 The trial court further concluded that plaintiffs’ burden of establishing a written contract as required by La. R.S. 23:921 C, pursuant to which Ms. Derouen’s work as an independent contractor was performed, was not satisfied by the Just 4 Him operating manual.
 

 Plaintiffs appealed, urging that the trial court incorrectly concluded that: 1) Ms. Derouen was an independent contractor for purposes of applying La. R.S. 23:921, and 2) Just 4 Him’s operating manual was not an enforceable contract.
 
 [4]
 

 II. ANALYSIS
 

 Historically, Louisiana has disfavored noncompetition agreements.
 
 Swat 24 Shreveport Bossier, Inc. v. Bond,
 
 00-1695, p. 4 (La.6/29/01), 808 So.2d 294, 298. Such agreements are deemed to be against public policy, except under the limited circumstances delineated by statute.
 
 [5]
 

 LaFourche Speech & Language Services, Inc. v. Juckett,
 
 94-1809, p. 3 (La.App. 1st Cir.3/3/95), 652 So.2d 679, 680,
 
 writ denied,
 
 95-0850 (La.5/12/95), 654 So.2d 351. At all times pertinent to this matter, La. R.S. 23:921 provided in part as follows:
 

 A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, 1 (¡or business of any kind, except as provided in this Section, shall be null and void.
 
 [6]
 

 
 *14
 
 [[Image here]]
 

 C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as
 
 an agent, servant, or employee
 
 may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
 
 An independent contractor, whose work is performed pursuant to a written contract,
 
 may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract. (Footnote and emphasis added.)
 

 Louisiana Revised Statutes 23:921 C is an exception to Louisiana’s public policy against noncompetition agreements and, as such, must be strictly construed.
 
 Kimball v. Anesthesia Specialists of Baton Rouge, Inc.,
 
 00-1954, pp. 6-7 (La.App. 1st Cir.9/28/01), 809 So.2d 405, 410-11,
 
 writs denied,
 
 01-3316 & 01-3355 (La.3/8/02), 811 So.2d 883
 
 &
 
 886.
 

 Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought by making a prima facie showing that the party will prevail on the merits of the case.
 
 Vartech Systems, Inc. v. Hayden,
 
 05-2499, p. 7 (La.App. 1st
 
 Cir.12/20/06),
 
 951 So.2d 247, 255. However, where an obligor has failed to perform in accordance with the terms of a noncompetition |7agreement, the court shall order injunctive relief even without a showing of irreparable harm upon proof of the obligor’s breach.
 
 See Id.; Clear Channel Broadcasting Inc. v. Brown,
 
 04-0133, p. 6 (La.App. 4th Cir.3/30/05), 901 So.2d 553, 557;
 
 see also
 
 La. R.S. 23:921 H.
 

 Even though La. R.S. 23:921 mandates the court to issue injunctive relief upon proof of the obligor’s failure to perform, the employer must still establish that it is entitled to relief.
 
 Vartech Systems, Inc.,
 
 05-2499 at pp. 7-8, 951 So.2d at 255. If the agreement is found to be unenforceable or the agreement does not fall within an exception found in La. R.S. 23:921, the employer is unable to establish that it is entitled to the relief sought.
 
 CDI Corp. v. Hough,
 
 08-0218, p. 6 (La.App. 1st Cir.3/27/09), 9 So.3d 282, 287.
 

 Ordinarily, a trial court exercises great discretion in granting or denying the requested relief.
 
 Vartech Systems, Inc.,
 
 05-2499 at pp. 8, 951 So.2d at 256. Absent a clear abuse of that discretion, the trial court’s determination will not be disturbed on appeal.
 
 CDI Corp.,
 
 08-0218 at p. 6, 9 So.3d at 287. In this case, however, the underlying issue is whether the noncom-petition agreement falls within the exception found in La. R.S. 23:921 C. The proper interpretation of a statute is a question of law that we review on a
 
 de novo
 
 basis.
 
 CDI Corp.,
 
 08-0218 at p. 7, 9 So.3d at 287.
 

 1. Employee or Independent Contractor Status
 

 Despite the petition’s allegations and testimony by Mr. Sevin that Ms. Der-ouen was an independent contractor, plaintiffs now argue on appeal that Ms. Der-ouen was an employee for purposes of applying La. R.S. 23:921. Plaintiffs urge
 
 *15
 
 that pursuant to the operating manual, they maintained the right to terminate | astylists for any reason and otherwise maintained control over their stylists, and as such, Ms. Derouen was actually their employee. Generally, the distinction between employee and independent contractor status is a factual determination decided on a case-by-case basis, which is subject to a manifest error standard of review.
 
 See Tower Credit, Inc. v. Carpenter,
 
 01-2875, pp. 6-7 (La.9/4/02), 825 So.2d 1125, 1129-30. But in this case, defendants counter plaintiffs’ contentions on appeal, urging that the allegations of plaintiffs’ petition and Mr. Sevin’s testimony constitute a “judicial confession” that Ms. Der-ouen was an independent contractor pursuant to La. C.C. 1853. We find merit in defendants’ contention.
 

 Louisiana Civil Code article 1853 provides:
 

 A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
 

 A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
 

 Well-settled jurisprudence establishes that an admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it.
 
 C.T. Traina, Inc. v. Sunshine Plaza, Inc.,
 
 03-1003, p. 5 (La.12/3/03), 861 So.2d 156, 159. In this instance, plaintiffs judicially admitted that Ms. Derouen was an independent contractor when they made multiple allegations to that effect in their petition. Mr. Sevin’s testimony during trial further confirmed that judicial confession:
 

 [Mr. Sevin]:
 

 Every service that [Ms. Derouen] does ... she makes ... [50%] off of it. THE COURT:
 

 Okay. So she wasn’t an employee?
 

 | s[Mr. Sevin]:
 

 More like—
 

 THE COURT:
 

 You paid taxes?
 

 [Mr. Sevin]:
 

 More like an independent contractor we 1099 them.
 

 THE COURT:
 

 You gave them 1099’s?
 

 [Mr. Sevin]:
 

 Yes, sir.
 

 [[Image here]]
 

 THE COURT:
 

 So the vacation pay [addressed in the operating manual] was really a gift in the since (sic) that they got paid for not being there.
 

 [Mr. Sevin]:
 

 Correct....
 

 THE COURT:
 

 Right. But usually vacation pay you talk about in terms of employees.
 

 [Mr. Sevin]:
 

 Oh okay.
 

 THE COURT:
 

 These are independent contractors. [Mr. Sevin]:
 

 Yes, sir.
 

 [[Image here]]
 

 THE COURT:
 

 Okay. And the same thing with the Christmas bonus if there was one. That was basically a gift.
 

 [Mr. Sevin]:
 

 Yes, sir.
 

 li(A judicial confession has the effect of waiving evidence as to the subject of the admission.
 
 Id.
 
 Article 1853 explicitly provides that a judicial confession may be
 
 *16
 
 revoked only on the ground of error of fact.
 
 C.T. Traina, Inc.,
 
 03-1003 at p. 6, 861 So.2d at 160. Plaintiffs have at no time asserted that its judicial confession that Ms. Derouen was an independent contractor was made in error.
 
 Id.
 
 It was not until the trial court ruled adversely to plaintiffs, and they realized that them admission worked to their detriment, with respect to the application of La. R.S. 23:921 C, that they retreated from then-previous, committed stance. We conclude based on the record before us that plaintiffs’ judicial confession that Ms. Derouen was an independent contractor was never revoked on the ground of error of fact.
 

 2. Work Performed Pursuant to a Written Contract
 

 Louisiana Revised Statutes 23:921 C authorizes independent contractors, “whose work is performed pursuant to a written contract,” to enter into noncompet-ition agreements in accordance with the terms of that subsection. Plaintiffs urge that if Ms. Derouen is considered an independent contractor, the operating manual, which includes the noncompetition clause, satisfies the statutory writing requirement. Plaintiffs argue that the trial court misinterpreted La. R.S. 23:921 C by interpreting it to require that the “written contract” must address how the work is to be performed. Plaintiffs assert that the statute does not require the written contract to address any particular terms, and because a lack of employer control over a job is indicative of an independent contractor relationship, the absence of such terms cannot be fatal to the enforcement of the written agreement at hand. We find no merit in these contentions.
 

 | ^Hiring the services of another person is a form of a contract of lease. La. C.C. art. 2745;
 
 Loup v. Louisiana State School for the Deaf,
 
 1998-0329, p. 4 (La.App. 1st Cir.2/19/99), 729 So.2d 689, 692. For a contract of lease to be valid, there must be a thing, a price, and consent. La. C.C. art. 2670. In order to enforce a non-competition agreement against an independent contractor, La. R.S. 23:921 C mandates that the independent contractor’s work is performed “pursuant to a written contract.” Interpreting this statutory requirement strictly, in accordance with Louisiana’s public policy against noncom-petition agreements, we construe this language as requiring a valid contract of lease in written form. A contrary interpretation would defeat Louisiana’s strong objective of preventing an individual from contractually depriving himself of the ability to support one’s self where the terms of his oilier work are not the clear object of the contract. Because Just 4 Him’s operating manual neither specified an agreement as to the price that Ms. Derouen was to be paid nor specified the services she was to perform, it did not constitute a contract of lease; thus, Ms. Derouen’s work was not performed pursuant to it within the meaning of La. R.S. 23:921 C. Accordingly, because plaintiffs did not establish that Ms. Derouen was performing work “pursuant to a written contract” as contemplated by La. R.S. 23:921 C, they did not establish that the noncompetition agreement met the requirements of that exception and that they were entitled to the relief sought.
 
 CDI Corp.,
 
 08-0218 at p. 6, 9 So.3d at 287. The trial court properly denied plaintiffs’ motion for a preliminary injunction.
 

 hJIL CONCLUSION
 

 For these reasons, we affirm the trial court’s judgment denying plaintiffs’ motion for a preliminary injunction. Appeal costs are assessed against plaintiffs-appellants.
 

 AFFIRMED.
 

 [2]
 

 . The record establishes that each stylist had a different agreement regarding compensation, with some receiving a smaller percentage of the amount of the services rendered.
 

 [3]
 

 . Ms. Derouen testified she was initially paid in cash and later paid with a Just 4 Him check from the J4H franchise.
 

 [4]
 

 . An appeal may be taken as a matter of right from a judgment relating to a preliminary injunction. La. C.C.P. art. 3612.
 

 [5]
 

 . Louisiana’s strong public policy restricting these types of agreements is premised on an underlying state objective to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden.
 
 Kimball v. Anesthesia Specialists of Baton Rouge, Inc.,
 
 00-1954, p. 6 (La.App. 1st Cir.9/28/01), 809 So.2d 405, 410.
 
 writs denied,
 
 01-3316 & 01-3355 (La.3/8/02), 811 So.2d 883 & 886.
 

 [6]
 

 .Acts 2010, No. 164, effective August 15, 2010, added the following sentence to Subsection 1 of Paragraph A of La. R.S. 23:921:
 

 However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.