McClendon, j.
|gThe defendant appeals from a trial court judgment granting a preliminary injunction in favor of the defendant’s former employer based on a noncompetition agreement. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Joy Stewart was employed by Acadian Cypress & Hardwood, Inc. (Acadian) from May 2004 through April 2012 as a sales representative and was an at-will employee at all times in which she worked for Acadi-an. Acadian is a supplier of domestic and imported hardwood lumber and plywood, hardware, and specialty items, as well as a manufacturer of hardwood moldings. Because of the amount of training that employees received and their exposure to confidential information, Acadian presented a non-competition and non-solicitation agreement to their key employees, mainly those in upper management and sales. Ms. Stewart signed the Non-Competition/Non-Solicitation Agreement (Agreement) in September of 2009. She continued employment with Acadian until April of 2012, when she began employment with Deano Hardwoods, LLC, a competitor of Acadian.
Acadian filed a petition for injunctive relief and damages against Ms. Stewart for her breach of the Agreement. On May 21, 2012, after an evidentiary hearing, the trial court granted Acadian’s request for preliminary injunction. A judgment was signed on June 1, 2012 and provided, in pertinent part:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a preliminary injunction issue herein effective until the further Order of this Court, but in no event for a period to exceed two years from April 27, 2012 and enjoining *669 defendant, Joy Stewart, from soliciting current or former, customers or suppliers, of Acadian Cypress & Hardwoods, Inc.; and from carrying on or engaging in a business directly or indirectly, as an employee, independent contractor, owner, principal, or otherwise, that competes with Acadian Cypress & Hardwoods, Inc., specifically including, but not limited to Deano Hardwoods, LLC, where such business provides any of the following products and services: domestic and imported hardwood sales, domestic and imported plywood sales, milling services, cypress propriety products, cabinets and millwork accessories, drying services and distribution of those products. Said restrictions shall only apply within the following parishes and counties:
| ^Louisiana: St. Tammany Parish, Livingston Parish, Tangipahoa Parish, St. Helena Parish, Iberville Parish, East Baton Rouge Parish, West Baton Rouge Parish, Ascension Parish, East Feliciana Parish, West Feliciana Parish, Orleans Parish, Jefferson Parish, Jefferson Davis Parish, St. Charles Parish, St. John the Baptist Parish, St. Bernard Parish, Evangeline Parish, St. Landry Parish, Lafayette Parish, Iberia Parish, Washington Parish, Cameron Parish, Vermilion Parish, and Acadia Parish;
Mississippi: Pearl River County, Hancock County, Harrison County, Hinds County, Forrest County, Pike County, Stone County, and Jackson County;
Alabama: Mobile County and Baldwin County; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a preliminary injunction issue herein enjoining defendant, Joy Stewart, from disclosing names and contact information of current or former customers, names and contact information of current or former suppliers, costs, pricing, or other confidential information of Acadian Cypress & Hardwoods, Inc. (confidential information being defines as any information not freely distributed to the public by Acadian Cypress & Hardwoods, Inc. and/or information that cannot be acquired independently, without resort to confidential information that Acadian Cypress shared with Joy Stewart during her employment.) until the further Orders of this Court[.]
In her appeal, Ms. Stewart urges that the trial court erred in granting the preliminary injunction. Ms. Stewart asserts that the Agreement is void and unenforceable because: (1) the Agreement does not contain a clear and unequivocal definition for when the non-competition provisions are triggered; (2) there was no valid cause in the Agreement; and (3) the Agreement did not contain a “severability” clause which would validate otherwise valid provisions.
LAW AND DISCUSSION
Historically, Louisiana has disfavored noncompetition agreements. SWAT Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294, 298. Such agreements are deemed to be against public policy, except under the limited circumstances delineated by statute. J4H, L.L.C. v. Derouen, 10-0319 (La.App. 1 Cir. 9/10/10), 49 So.3d 10, 13.[1]
*670 Louisiana Revised Statutes 23:921A(1) provides:
|4Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
The exceptions are found in Subsection C, which provides, in pertinent part:
Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
Thus, to be valid, a noncompetition agreement may limit competition only in a business similar to that of the employer, in a specified geographic area and for up to two years from termination of employment. Cellular One, Inc. v. Boyd, 94-1783 (La.App. 1 Cir. 3/3/95), 653 So.2d 30, 33, writ denied, 95-1367 (La.9/15/95), 660 So.2d 449. Because Subsection C is an exception to Louisiana’s public policy against non-competition agreements, it must be strictly construed. Vartech Systems, Inc. v. Hayden, 05-2499 (La.App. 1 Cir. 12/20/06), 951 So.2d 247, 255.
Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Vartech Systems, 951 So.2d at 255. However, in the event an employee enters into an agreement with his employer not to compete, pursuant to LSA-R.S. 23:921, and fails to perform his obligation under such an agreement, the court shall order injunctive relief even without a showing of irreparable harm, upon proof by the employer of [¿¡the employee’s breach of the non-competition agreement. See LSA-R.S. 23:921H.[2]
In determining whether the employer has met his burden of proof, the courts have been called on to consider the validity and enforceability of the agreement sought to be enforced by the employer, Vartech Systems, 951 So.2d at 255. Where the actions sought to be enjoined pursuant to a noncompete agreement do not fall within the exception found in LSA-R.S. 23:921C or where the non-compete agreement is found to be unenforceable for failure to conform to LSA-R.S. 23:921, the employer is unable to establish that it is entitled to the relief sought. Vartech Systems, 951 So.2d at 255-56.
Typically, a trial court enjoys considerable discretion in determining whether a preliminary injunction is warranted, and the issuance of a preliminary injunction by *671 the trial court will not be disturbed on appeal absent a clear abuse of discretion. Vartech Systems, 951 So.2d at 256. However, the underlying issue in this case is whether the noncompetition agreement falls within the exception found in LSA-R.S. 23:921C. The proper interpretation of a statute is a question of law that we review on a de novo basis. J4H, L.L.C., 49 So.3d at 14.
In the matter sub judice, Ms. Stewart argues that the Agreement does not contain a clear and unequivocal definition for when the non-competition provisions begin. Ms. Stewart argues that instead of tying the non-competition provisions to a date certain such as the termination of employment, the Agreement states that its provisions are triggered when her “relationship” ends. The Agreement provides, in pertinent part: “This agreement shall only restrain competition or solicitation by Employee for a period of two (2) years after Employee’s relationship with Company terminates” (Emphasis added). Ms. Stewart argues that “relationship” is never defined in the Agreement, and this |fiterm can be construed multiple ways. Ms. Stewart avers that she still maintains personal relationships with employees of Aca-dian, and therefore it can be argued that her “relationship” has not terminated. Therefore, Ms. Stewart argues, because the triggering mechanism is susceptible of two or more reasonable interpretations, this Agreement is overly broad and not enforceable against her. We disagree.
The words of a contract must be given their generally prevailing meaning. LSA-C.C. art.2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. Art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art.2050.
In this case, the term “relationship” is not susceptible to two or more reasonable interpretations. Ms. Stewart’s relationship with Acadian was clearly one of employment. The word “relationship” must be interpreted as having the meaning that best conforms with the object of the contract. See LSA-C.C. art.2048. The Agreement is clearly a non-competition agreement between an employee and an employer. Ms. Stewart is referred to as “Employee” throughout the Agreement. To interpret “relationship” as a possible personal relationship with co-workers does not conform with the object of the contract.
Furthermore, the Agreement also provides: “The nature of the employment relationship of Employee to Company as an at-will employee is not modified by this agreement.” (Emphasis added). This language illustrates that Ms. Stewart’s relationship, as used in this Agreement, was one of employment. The only reasonable interpretation of the Agreement is that the non-competition provisions were triggered when Ms. Stewart’s employment with Aca-dian ended. Thus, the Agreement is not overly broad as argued by Ms. Stewart, and this assignment of error is without merit.
Ms. Stewart next argues that there was no valid cause for execution of the Agreement. She maintains that because the terms of her employment did not 17change after signing the Agreement, she was in the same position as she was prior to signing the Agreement, and; therefore, there was no mutuality of obligation.
An obligation cannot exist without a lawful cause. LSA-C.C. art.1966. Cause is defined as the reason why a party obligates himself. LSA-C.C. art.1967. *672 The cause need not have any economic value. Mapp Const., LLC v. Southgate Penthouses, LLC, 09-0850 (La.App. 1 Cir. 10/23/09), 29 So.3d 548, 565, writ denied, 09-2743 (La.2/26/10), 28 So.3d 275; Aaron & Turner, L.L.C. v. Ferret, 07-1701 (La.App. 1 Cir. 5/4/09), 22 So.3d 910, 915 (on rehearing), writ denied, 09-1148 (La.10/16/09), 19 So.3d 476.
In Cellular One, 653 So.2d at 34, this Court held that any person, including an at-will employee, may enter into a non-competition agreement as long as the agreement complies with LSA-R.S. 23:921. In Cellular One, the defendants, who signed non-competition agreements as conditions of employment, asserted that such agreements should be unenforceable in at-will employment situations because of a lack of mutuality and an insufficiency of cause. The majority disagreed and held:
[W]e do not find that the agreement is unenforceable for lack of cause. The Civil Code defines a contract as “an agreement by two or more parties whereby obligations are created, modified, or extinguished.” No obligation can exist without a lawful cause, which is defined as “the reason why a party obligates himself.” The defendants signed the agreements as a condition of continued employment. Employment was the valid cause of the contract.
Id. (Internal citations omitted and emphasis added).
Ms. Stewart argues that this matter is distinguishable from Cellular One. She asserts that, unlike the present case, in Cellular One, the employer agreed to provide employees with “non-competition payments” for a three-year period following termination of employment. However, the “non-competition payments” in Cellular One did not influence the court’s decision that continued employment alone is a valid cause for a contract. In this matter, the Agreement provides: “In consideration for Employer’s continued employment with Company, the parties hereby agree as follows....” (Emphasis added). The Agreement | ^clearly states that the cause of this contract is Ms. Stewart’s continued employment with Acadian. While we recognize the inequities that may arise where at-will employment is sufficient valid cause for a non-competition agreement, we find Cellular One to be controlling. Therefore, we reject Ms. Stewart’s argument that the Agreement is unenforceable for a lack of cause.
Accordingly, we conclude that the trial court did not err in granting the preliminary injunction against Ms. Stewart.[3]
CONCLUSION
For the foregoing reasons, we affirm the June 1, 2012 judgment of the trial court. Costs of this appeal are assessed against Ms. Stewart.
AFFIRMED.
WHIPPLE, C.J., concurs and assigns reasons.

. Louisiana’s strong public policy restricting non-competition agreements is based on an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden and also based on the fundamental right of individuals to seek success in our free-enterprise society. Vartech Systems, Inc. v. Hayden, 05-2499 (La. App. 1 Cir. 12/20/06), 951 So.2d 247, 254.

. Louisiana Revised Statutes 23:921H provides, in relevant part:
H. Any agreement covered by ... this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor’s failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.

. Because we find that Ms. Stewart's first two assignments of error are without merit, we need not address her third assignment of error.