CHUTZ, J.
Defendants-appellants, Talen's Marine & Fuel, LLC (Talen) and Martin Energy Services, LLC (MES), appeal the trial court's grant of summary judgment in favor of plaintiff-appellee, Apache Corporation (Apache), awarding a sum of money for duplicate payments Apache paid to defendants in conjunction with a fuel services contract. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On March 9, 2016, Apache filed a suit to recover duplicate payments it had tendered to Talen pursuant to a Master Service Contract by which Talen had provided *621 fuel to Apache at Talen's dock in Port Fourchon, Louisiana, for vessels performing work on behalf of Apache.[1] According to the allegations of the petition, between January 22, 2010 and March 31, 2012, Talen invoiced Apache twice for amounts of fuel purchases. Each purchase, invoice number, and the dates of the invoice and Apache's tender of payment were set forth in the petition. Since the second invoice Talen sent for an individual purchase contained a letter after the original invoice number, Apache averred that its accounting software did not detect the duplication.
When defendants did not file an answer to Apache's lawsuit, Apache sought and was granted a preliminary default on April 18, 2016. Thereafter, on April 29, 2016, defendants filed an answer, affirmative defenses, and exceptions.
Apache filed a supplemental and amended petition on July 15, 2016, reiterating its claims insofar as defendants' liability for duplicate payments made to Talen and added additional claims against MES.[2] Apache averred that MES invoiced Apache twice for the same specified amounts of seven separate fuel purchases or services, again adding a letter after the numerical portion of the original invoice thereby avoiding detection as a duplicate by Apache's software. Apache also alleged that on ten occasions, due to an incorrect invoice number in its records, Apache mistakenly tendered a second payment to MES for fuel, bulk oil, and other services, which MES "quietly received" without bringing the duplicate payment to Apache's attention. All totaled, Apache alleged that defendants received $105,229.24 in payments that Apache did not owe and for which defendants were bound to repay to Apache.
On September 14, 2016, Apache propounded requests for admissions asking defendants to admit or deny their total indebtedness of $105,229.24 as well as an invoice-by-invoice request of each sum that Apache alleged was due to it as a result of the duplicate payments. In total, 25 requests for admission were propounded. On October 17, 2016, Apache sent a letter to defendants, confirming a two-week extension of time that it had given to defendants to respond to the requests for admission. When the deadline passed, on November 3, 2016, Apache emailed defendants, noting that the October 28, 2016 deadline had passed and requesting that defendants "confirm the responses are on their way."
Having received no reply to its November 3, 2016 email inquiry, Apache filed a motion for summary judgment on November 14, 2016, claiming entitlement to a judgment of $105,229.24 as well as court costs and legal interest. The gist of Apache's rationale was that since defendants had failed to respond to its requests for admissions, the requests were statutorily deemed admitted. Given the admissions, Apache contended that it had established that defendants were liable to restore the overpayments to it.
A hearing on Apache's motion for summary judgment was set for January 6, 2017, but on December 21, 2016, defendants *622 filed an unopposed motion to continue the hearing that the trial court granted.
On January 23, 2017, defendants filed an opposition to Apache's motion for summary judgment in which they maintained that the parties had been actively working to resolve the matter extrajudicially. Defendants also indicated that they had contemporaneously served responses to Apache's requests for admissions. A copy of the responses was subsequently filed into the record on February 3, 2017.
Additionally, defendants attached to its opposition the affidavit of Rick Slone, an MES assistant controller, wherein he admitted MES had "received at least some amount of overpayment from Apache." He also denied the existence of the overpayments as alleged and described in the March 9, 2016 petition, stating, "In particular, it is unknown and in dispute how all overpayments came to be, the method of overpayment, whether any of the alleged overpayments have been rejected [and] sent back to Apache, whether any of the alleged overpayments have been satisfied, and perhaps most importantly, what the total amount of overpayments are." Slone explained that "the particulars of the payment history between the parties are difficult to extract from the financial records."[3]
A hearing was held on February 3, 2017, after which the trial court signed a judgment, granting Apache's motion for summary judgment. The judgment awarded to Apache the amount of $105,229.24, court costs, and legal interest. Defendants appeal.
DISCUSSION
Defendants assert the trial court erred in granting Apache's motion for summary judgment given that outstanding issues of material fact existed, particularly the total amount they owe to Apache for overpayments. They claim that the trial court's implicit conclusion-that the requests for admission were statutorily deemed admitted-was erroneous.
On appeal, appellate courts review the granting or denial of a motion for summary judgment de novo under the same criteria governing the district court's consideration of whether summary judgment is appropriate. Schultz v. Guoth , 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1005-06. A motion for summary judgment shall be granted only if the pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions admitted for purposes of the motion for summary judgment, show there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) & (4). The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1).
In support of its motion for summary judgment Apache relied on the failure of defendants to timely respond to the requests for admissions. Therefore, the initial issue before us is whether the requests for admission were statutorily deemed admitted.
A party may serve upon any other party a written request for the admission of the truth of any relevant matters of fact. La. C.C.P. art. 1466. Generally, the matter is deemed admitted if the party to whom the request is directed does not respond within 30 days after service of the request. La. C.C.P. art. 1467A. Any matter deemed *623 admitted pursuant to La. C.C.P. art. 1467 is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. La. C.C.P. art. 1468. The court may permit withdrawal of an admission when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal of the admission will prejudice him in maintaining his action or defense on the merits. La. C.C.P. art. 1468 ; Hall v. Our Lady of the Lake R.M.C. , 2006-1425 (La. App. 1st Cir. 6/20/07), 968 So.2d 179, 183. It is within the trial court's discretion to determine whether to allow the withdrawal of the admission. See Prestage v. Clark , 97-0524 (La. App. 1st Cir. 12/28/98), 723 So.2d 1086, 1091, writ denied sub norm., Prestige v. Clark , 99-0234 (La. 3/26/99), 739 So.2d 800.
At the hearing on Apache's motion for summary judgment, the following exchange occurred during defendants' argument:
[By defendants' counsel:]
It's my understanding that a motion can be made to withdraw the deemed admissions by filing the actual responses into the record. It's unusual to do. Usually you just ... send them to counsel, which was done in this case. And I believe [Apache] acknowledged that in [its] reply memorandum that the replies were late.
We would ask to be allowed to orally withdraw the admissions by virtue of filing into the record a duplicate copy of exactly what we served on [Apache] on January 23rd.
[By the court:]
Granted.
Although Apache suggests that in granting the motion, the trial court simply intended to allow defendants to file their responses to the requests for admission into the record, we find it unnecessary to second guess the trial court's intent insofar as the scope of its grant of defendants' motion. Since the ruling pertained to discovery matters, the trial court's grant of the oral motion to withdraw the admissions was interlocutory in nature. See Sanders v. J. Ray McDermott, Inc. , 2003-0064 (La. App. 1st Cir. 11/7/03), 867 So.2d 771, 776 n.3. As such, it could be modified by the trial court at any time prior to rendition of a final judgment on the merits. See La. C.C.P. arts. 1841 and 1915B(2); LeBlanc v. Aysenne , 2005-0297 (La. 1/19/06), 921 So.2d 85, 87 n.2. Thus, to the extent the trial court granted the motion to withdraw the admissions, it was at liberty to implicitly reverse its earlier ruling when it rendered summary judgment in favor of Apache, which is what the trial court apparently did.
Without denying that the merits of Apache's motion for summary judgment were not subserved by their late oral motion to withdraw the statutorily deemed admissions, defendants urge that in serving their responses to Apache eleven days before the hearing, Apache was not prejudiced. They contend that in their answers to the petition and the amended and supplemented petition, they denied each allegation that set forth an amount that Apache averred defendants owed for duplicate payments. Since Apache's requests for admissions asked defendants to admit or deny the truth of the same facts that Apache had set forth in the allegations of the petition, defendants reason that Apache was not surprised or unable to prepare for the hearing on its motion for summary judgment. Thus, they claim that the trial court erred by implicitly disallowing them to withdraw the deemed admissions.
In pursuing its motion for summary judgment, Apache relied solely on the *624 deemed admissions to establish its prima facie case of entitlement to judgment. Eleven days before the hearing, Apache received defendants' responses. In response to the request for an admission that defendants owed the total amount of $105,229.24, defendants admitted "to the best of [their] knowledge, at least some amount of overpayment was received by [them] from Apache." The remainder of the request for admission was denied for lack of information sufficient to justify a belief therein. As to the articulated invoiced amounts of duplicate payments set forth over 25 requests for admission, defendants' response to each was that the amount could neither be admitted nor denied and, in an abundance of caution, the response to the request for admission was denied for lack of information sufficient to justify a belief therein. Of the responses, it was only when they were asked to admit that defendants had made no payments to Apache that defendants unequivocally denied the request "as written."
While it is true that Apache was made aware by the answer to the petition and the supplemented and amended petition that defendants denied the substance of the requests for admissions, when 30 days passed without responses to the requests for admissions and, again, when the two-week extension passed without the responses, Apache clearly relied on defendants' failure to respond to the requests for admission and their statutory admission to move for summary judgment. Defendants' responses provided absolutely no information to Apache as to what, if anything, defendants had done to ascertain the amount of money it admitted owing Apache for the duplicate payments.[4] Moreover, defendants did not explain why they failed to either supply their barebones responses to Apache timely or file their motion for withdrawal of admissions before orally moving for that relief during the summary judgment hearing.
Given the dilatory manner in which defendants responded to Apache's claims for recovery of overpayments from inception; that they did not respond to the requests for admissions until four months after they were propounded and eleven days before the hearing; that they failed to explain why they did not provide their barebones responses earlier; and that they waited until the summary judgment hearing to orally move to withdraw the statutorily deemed admissions, we cannot say the trial court abused its discretion by apparently disallowing defendant's withdrawal of admissions subsequent initially orally granting such at the hearing. The record clearly supports the conclusions that, under La. C.C.P. art. 1468, presentation of the summary judgment would not have been subserved; and that Apache would have been prejudiced in maintaining its motion for summary judgment had the trial court granted defendants' oral motion to withdraw the admissions. See *625 Guillory v. Christus Health Central Louisiana , 2016-841 (La. App. 3d Cir. 5/10/17), 219 So.3d 1115, 1118-19, writ denied, 2017-0953 (La. 10/9/17), 227 So.3d 836 (no abuse of discretion in disallowing withdrawal of admissions where defendant had several years to investigate and plaintiff would have been prejudiced by withdrawal).
In light of the admissions, Apache established that defendants were liable to it for $105,229.24. See La. C.C. art. 2299 (a person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it); see also Bossier Parish Sch. Bd. v. Pioneer Credit Recovery, Inc. , 49,525 (La. App. 2d Cir. 1/14/15), 161 So.3d 1007, 1009 (collection agency was required to reimburse former employer of student loan borrower for its overpayment).
In addition to Slone's affidavit, which merely acknowledged the existence of overpayments without identifying any specific amount owed, defendants also offered correspondence from defendants' attorney to Apache stating that defendants were attempting to extrajudicially resolve the matter and admitted that they owed Apache "at least some amount of overpayment." This showing was insufficient to counter the statutorily deemed admission that defendants were liable to Apache for $105,229.24 in overpayments. Thus, defendants failed to produce factual support sufficient to establish the existence of a genuine issue of material fact. See La. C.C.P. art. 966A(3) & D(1). Accordingly, on de novo review, we conclude that the trial court correctly granted summary judgment, awarding to Apache the amount of $105,229.24, court costs, and legal interest against defendants.
DECREE
For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against defendants-appellants, Talen's Marine & Fuel, LLC and Martin Energy Services, LLC.
AFFIRMED.

Apache alleged, upon information and belief, that MES had acquired all interest in Talen.

Although the original petition named Martin Midstream Partners, LP as a defendant, the supplemental and amended petition subsequently deleted allegations of liability against it. The supplemented and amended petition also added allegations that MES was formerly known as L & L Oil and Gas LLC and also formerly known as Midstream Fuel Service LLC. While Apache specifically identified which MES entity that invoiced Apache, since in this appeal MES has not challenged its liability for these entities, we refer to each as MES.

Slone suggested that MES's difficulty in ascertaining the payment history was due to its acquisition of the former entities by merger.

Particularly problematic was MES's failure to admit or deny the truth of any of the requests for admissions Nos. 16-21, all of which addressed invoices that MES was alleged to have directly sent to Apache. Specifically, MES failed to offer an explanation of why it was unable to extract information from its own financial records which were unlike the other requests for admission which required examination of the financial records of MES's predecessors in interest. We note that Apache has not raised the issue of the sufficiency of defendants' answers. See La. C.C.P. art. 1467A (answering parties may not give lack of information or knowledge as a reason for failure to admit or deny unless they state that they have made reasonable inquiry and that the information known or readily obtainable by them is insufficient to enable them to admit or deny).