STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0037

CALVIN J. HILL, INDIVIDUALLY AND AS THE EXECUTOR
OF THE SUCCESSION OF ELNORA JOHNSON HILL

VERSUS

TMR EXPLORATION, INC., PARK EXPLORATION, INC.,
AND VITOL RESOURCES, INC.

Judgment Rendered: **OCT 0 4 2022**

\* \* \* \* \* \* \*

On Appeal from the 18th Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Trial Court Docket Number 41,245, Div. "B"

Honorable Tonya S. Lurry, Judge Presiding

\* \* \* \* \* \* \*

| | |
|---|---|
| Brent K. DeLee<br>Kirby J. Guidry<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellants,<br>Calvin Hill, et al |
| Chad A. Aguillard<br>Ali Zito Shields<br>New Roads, Louisiana<br>and<br>Thomas A. Nelson<br>New Roads, Louisiana | Counsel for Plaintiffs/Appellants,<br>Roosevelt Hill, et al |
| Monique M. Edwards<br>Baton Rouge, Louisiana<br>and<br>Isaac Jackson, Jr.<br>Plaquemine, Louisiana | Counsel for Plaintiff/Appellant,<br>Felix Hill |
| Patrick J. McShane, T.A.<br>Danica Benbow Denny<br>Kathleen P. Rice<br>New Orleans, Louisiana | Counsel for Defendant/Appellee,<br>Chaucer Corporate Capital (No. 2)<br>Limited |

\* \* \* \* \* \* \*

**BEFORE: WELCH, PENZATO, AND LANIER, JJ.**

**PENZATO, J.**

Calvin J. Hill, et al.,[1] plaintiffs, and Roosevelt Hill, et al.[2] and Felix Hill, intervenors (collectively, "the Hills"), appeal the trial court's judgment granting a motion for summary judgment in favor of defendant, Chaucer Corporate Capital (No.2) Limited, the insurer of Park Exploration, Inc. For reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

This case, which concerns a claim of subsurface trespass, has a complex factual and procedural history familiar to this court.[3] Pertinently, the Hills own various undivided interests in a 22.768-acre tract of immovable property, more particularly described as the North 1/3 of Lot 5, Section 93, Township 7 South, Range 10 East (abbreviated as "Section 93, T7S, R10E"), Parish of West Baton Rouge. The Hills assert that TMR Exploration, Inc. entered an oil and gas mineral lease with A. Wilbert's Sons, LLC in 2006 to drill a well on the Wilbert property in Section 93. The lease covered the North 1/2 of Section 93, Township 7 South, Range 10 East, Parish of West Baton Rouge. Although TMR initially obtained a permit to directionally drill the well on the Wilbert property, the well was horizontally drilled, causing the bottom hole of the well to trespass beneath the

---

[1] The Calvin Hill plaintiffs are: Calvin J. Hill; Charles Edward Hill; Marin Hill Walker a/k/a Merion Hill Walker; Esquemon Anthony Hill; Rhonda Foster; Dr. Russell Hill; Russell Hill; Dietrich Duane Hill a/k/a Duane Dietrich Hill; Dwayne Hill; Pamela Hill; Vincent Hill; Jeffrey Hill; Shawn Hill; Mary Charles; Mary Hill; Kendra Hill; Bernadette Hill; Kenneth Amorio a/k/a Kenneth Amario; Monica Walker a/k/a Monica Whitaker; Dionne Hill; Duwana Hill; Kimsiana Hill-Lathan a/k/a Kimsiana Hill-Latham; Andre Hill; Napoleon Whitaker; Mary Ativie; Merion Jean Johnson; Carnesha Stanton; Annette Whitaker-Woods a/k/a Annette Woods; Pernell Hill; Eurille Hill; Karen Maze; Amos Lagarde; Ida Mae Hill Johnson; Shirley Lockman; Burnett Grevious; Albert Grevious; Stalette Brown; Emelda Hill; Amanda Harris; Leon Whitaker; Craig Hill; Lacora Whitaker; Monica Whitaker; Lee Whitaker; Rodney Hill; Edward Hill; Oran Hill and his heirs or representatives; Marcus Johnson; and Terrol Sanders.

[2] The Roosevelt Hill Intervenors are: Roosevelt Hill; Alven Grevious a/k/a Alvin Grevious; Leo Hill; Demetria Jones a/k/a Dementia Jones; Kathryn Devezin-Joyner; Irene Sweeney; Douglas Joseph Sweeney; Debbie Marie Sweeney; Jacqueline Amanda Sweeney; Taylor Sweeney; Rachel Sweeney; Jevaughn Smith and Sonya Smith, individually and on behalf of Kristin Marie Charles; Kristina Charles; Ella Johnson; Victor Johnson; Lorenzo Hill; and Lorenzo Johnson.

Hills' property. Thus, the Hills contend that oil was illegally produced and sold from beneath their property beginning in 2008.

TMR operated the well until July 1, 2010. At that time, the Wilbert lease was assigned to Park, and Park became operator of the well. Although Park eventually obtained leases from some of the Hills, it is undisputed that no leases existed between TMR/Park and any of the Hills prior to 2012. The Hills allege that Park produced oil from beneath their property in violation of their right to remove oil, resulting in damages to their property. Chaucer issued a commercial general liability policy to Park for the policy period June 1, 2010 to June 1, 2011.[4] The Hills allege that Chaucer's policy provides coverage for their property damage purportedly caused by Park.

Chaucer filed a motion for summary judgment in May 2021, asserting three grounds for summary dismissal of the Hills' claims. First, Chaucer asserts that the insuring agreement does not afford coverage because Park had knowledge of the alleged property damage prior to the start of the policy period. The policy's coverage terms pertinently state:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

\*\*\*

b. This insurance applies to..."property damages" only if:

\*\*\*

(3) Prior to the policy period, no insured...knew that the..."property damage" had occurred, in whole or in part. If such a listed insured...knew, prior to the policy period, that the..."property damage" occurred, then any continuation, changes or resumption of such..."property damage" during or after the policy period will be deemed to have been known prior

---

[3] The writs and appeals filed in this matter include an appeal pending before this court (2022-0036) concerning the grant of summary judgment in favor of Gemini Insurance Company, who also insured Park.

[4] An umbrella policy was also issued to Park for the same policy period. Pursuant to its terms, the policy "does not apply to any actual or alleged liability" "for any 'Claim' not covered by the underlying insurance(s) policies listed in the Declarations."

to the policy period.

\*\*\*

d. ..."property damage" will be deemed to have been known to have occurred at the earliest time when any insured...

\*\*\*

(3) Becomes aware by any other means that..."property damage" has occurred or has begun to occur.

Next, Chaucer asserts that coverage is barred by the policy's expected/intended injury exclusion. Pursuant to this exclusion, no coverage was provided for "'property damage' expected or intended from the standpoint of the insured." Finally, Chaucer contends that coverage is precluded by the policy provision, which states that the policy does not apply to "actual or alleged liability arising out of or contributing to by the dishonesty or infidelity of the insured."

Chaucer relies on the same evidence and arguments to support each contention and, specifically, to establish Park's knowledge of the property damage prior to the inception of the policy. According to Chaucer, the Hills "judicially confessed" in a prior motion for partial summary judgment that Park had knowledge of their property damage, at least in part, in February 2010, months before the start of its policy period. In their prior motion, filed in August 2015, the Hills sought to rescind and cancel lease agreements they entered into with Park in 2012, alleging that Park knew the bottom hole of the well was located beneath their property but failed to disclose this information at the time the leases were entered.[5] To establish Park's knowledge, the Hills propounded requests for admission to Park in July 2015, requesting that Park admit, among other things, "You possessed information and knowledge that the toe of the well was located beneath Plaintiffs' property prior to being designated as Operator of the well." Park failed to respond to the requests for admission; thus, the Hills sought to have the requests "deemed admitted" in connection with their motion for partial summary judgment to cancel the leases. The Hills' motion was granted in January 2016, cancelling the leases

---

[5] Approximately half of the Hills had lease agreements with Park.

4

due to Park's fraud. The judgment is silent as to whether Park's unanswered requests for admission were deem admitted by the trial court.

Chaucer also attached excerpts from the depositions of Jerome Collins and Richard Campbell, Jr., a purported geologist.[6] Mr. Collins, who is allegedly employed by Fenstermaker & Associates, created a map of Section 93 in February 2010 at Park's request.[7] It appears that the February 2010 map was attached as an exhibit to Mr. Collins's deposition and included with Chaucer's motion; however, the map included in the appeal record is of such poor quality that it is illegible to this court. Nevertheless, Mr. Collins confirmed that the Hill property is not identified on the February 2010 map, because no new work was to be done in that area. Mr. Collins testified that the February 2010 map was created using the 1963 "Tobin map" as a base map, which depicted the Hill property.[8]

Mr. Campbell offered similar testimony, purportedly concerning the February 2010 map, and confirmed that markings on the map presented to him reflected the area where "somebody thought the bottom hole location was." Based on these markings, Mr. Campbell opined that "somebody knew" that the bottom hole of the well was under the Hill property.

Finally, Chaucer asserts that the Hills' allegations against Park made in their third supplemental and amended petition triggered the dishonesty/infidelity exclusion. The Hills alleged that Park willfully or intentionally trespassed, converted and produced minerals from the well beneath their property in bad faith, and violated and interfered with their rights. They further alleged that, by June 2010, Park "discovered information" sufficient to determine that the Hills owned

---

[6] From the evidence provided, this court was unable to confirm Chaucer's assertion that Mr. Campbell is a geologist.

[7] The parties assert that Mr. Collins is employed by Fenstermaker, but this is not evident from the deposition excerpts provided.

[8] It also appears the Tobin map was attached to Mr. Collins' deposition and included with Chaucer's motion. Like the February 2010 map, the Tobin map in the appeal record is not legible.

5

property in Section 93 and that the toe of the well penetrated beneath their property.

The Hills opposed Chaucer's motion, arguing that Park's unanswered requests for admission were not deemed admitted by the trial court in connection with their prior motion for partial summary judgment to cancel the leases and were not deemed admitted by operation of law.[9] *See* La. C.C.P. arts. 1467, 1468. To refute Chaucer's position, the Hills provided the court with Park's June 2014 interrogatory responses wherein Park was asked when it became aware that the bottom hole location of the well was beneath the Hill property. Park responded that it requested a general update of the fieldwide map from Fenstermaker in October 2011 and "this updated map showed the toe of the well bore inside the tract boundary of Section 93, T7S, R10E, whereas prior maps had it outside the boundary." Park was also asked how it became aware that the bottom hole location of the well was beneath the Hill property. In response, Park explained that it requested a general update of the fieldwide map from Fenstermaker and "this updated map (dated September 26, 2011) showed the toe of the well bore inside the tract boundary of Section 93, T7S, R10E." Finally, Park was asked, "On what date did you first obtain information whatsoever that Wilbert and Sons, LLC did not own all of Section 93, T7S, R10E...?" Park responded that, on or around June 2010, upon receiving TMR's well file, "there was an indication that others owned tracts in Section 93."

The Hills assert that, to the extent Park's unanswered requests for admission are deemed admitted, the requests and Park's interrogatory responses are "competing admissions," which create a genuine issue of material fact as to when Park knew that the well was located beneath their property.

---

[9] At the time the trial court heard the Hills' motion for partial summary judgment to cancel the leases, Judge James Best presided over this case. Since then, Judge Best has retired, and this case has been assigned to Judge Tonya Lurry.

6

In reply and in further support of its motion, Chaucer points out that Park undisputedly knew there were other owners in Section 93, in addition to Wilbert's Sons, in June 2010, before it became operator of the well. Thus, with "full knowledge" that no compulsory unit had been formed around the well and that there were other owners in Section 93, Park willingly and knowingly took over as operator. Chaucer argues that it "does not insure a liability that an insured intentionally and knowingly undertakes."

A hearing on Chaucer's motion was held on July 6, 2021. After hearing argument of counsel, the trial court granted Chaucer's motion, noting that "but for" Park's unanswered requests for admissions, the motion would be denied. The court concluded that the expected/intended injury exclusion in Chaucer's policy barred coverage for the Hills' claims because, pursuant to the requests for admission, Park had knowledge of the property damage before taking its first action as operator on July 1, 2010. A judgment in conformity with this ruling was signed on August 3, 2021. Pursuant to this court's interim order, an amended judgment, properly naming all plaintiffs and intervenors affected by the trial court's ruling, was subsequently signed on September 21, 2022.[10]

The Hills filed the instant appeal and identified several assignments of error, primarily concerning Park's unanswered requests for admission. First, the Hills assert that the trial court erred in finding that the requests for admission were previously deemed admitted. Next, the Hills maintain that, based on this erroneous conclusion, the trial court further erred by giving preference to the unanswered requests for admission over Park's interrogatory responses and by finding that the

---

[10] This court issued an interim order on September 12, 2022, remanding the matter to the trial court for the limited purpose of instructing the trial court to issue an amended judgment to correct the deficiencies identified in the order. Particularly, the original August 3, 2021 judgment referenced "CALVIN HILL, ET AL" and "Intervenors, ROOSEVELT HILL, ET AL" but did not specifically delineate the parties' names. In cases with multiple plaintiffs or defendants, the failure to name the plaintiff(s) or defendant(s) against whom the judgment is rendered makes the judgment fatally defective because one cannot discern from its face for or against whom it may be enforced. See Mizell v. Willis, 2019-0141 (La. App. 1st Cir. 1/15/19), 290 So.3d 247, 250.

expected/intended injury exclusion precluded coverage based on Park's knowledge of the property damage prior to becoming operator.[11]

## LAW AND ANALYSIS

### Standard of Review and Burden of Proof

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Such supporting documents may include, but are limited to, pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P art. 966(A)(4). When deciding whether to grant or deny a motion for summary judgment, the court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence. Any doubt as to a dispute regarding a genuine issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. *Chevis v. Rivera*, 2021-0124 (La. App. 1st Cir. 9/24/21), 329 So.3d 831, 834-35, *writ denied*, 2021-01546 (La. 12/21/21), 330 So.3d 317. Using these considerations and criteria, appellate courts review evidence *de novo* to determine whether summary judgment is appropriate. *Ellis v. Circle L Trucking, L.L.C.*, 2021-0457 (La. App. 1st Cir. 12/30/21), 340 So.3d 985, 988.

When determining whether a policy affords coverage for an incident, the party seeking coverage bears the burden of proving the incident falls within the policy's terms. *Ellis*, 340 So.3d at 989. Thus, the Hills will bear the burden of proof at trial on the issue of whether coverage exists under the primary terms of Chaucer's policy. Consequently, to succeed on this portion of its motion for

---

[11] The Hills also assert that the trial court erred by entering summary judgment against all Hill plaintiffs where only half moved for summary judgment to cancel the leases based on Park's fraud. In light of the conclusion reached in this opinion, we pretermit discussion of this assignment of error.

summary judgment, Chaucer is not required to negate all essential elements of the Hills' claim but, instead, must point out to the court the absence of factual support for one or more elements essential to their claim that coverage exists. If this is done, the burden shifts to the Hills to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Chaucer is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

Conversely, an insurer bears the burden of proving that a loss falls within a policy exclusion. *Ellis*, 340 So. 3d at 989. Therefore, Chaucer will bear the burden of proving at trial that the dishonesty/infidelity exclusion and/or the expected/intended injury exclusion applies to bar coverage for the Hills' claims. Since Chaucer will bear the burden on this issue, the burden of showing that no genuine issue of material fact exists and that summary judgment should be granted remains with Chaucer. La. C.C.P. art. 966(D)(1). Additionally, in determining whether an exclusion applies to preclude coverage, courts are guided by the well-recognized rule that an exclusionary clause in an insurance policy must be strictly construed against the insurer. *Ellis*, 340 So.3d at 989.

### Park's Knowledge: Unanswered Requests for Admissions & Interrogatory Responses

Louisiana Code of Civil Procedure article 1467(A), which sets forth the procedure concerning requests for admission, states, in part, "Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney." Similarly, La. C.C.P. art. 1468 pertinently provides, "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the

9

admission." Thus, absent summary judgment evidence to establish that Park served the Hills, the requesting party, with a written objection, the requests for admission served upon Park are deemed admitted.[12] *See Apache Corporation v. Talen's Marine & Fuel, LLC*, 2017-0714 (La. App. 1st Cir. 2/7/18), 242 So.3d 619.

As noted, Park's unanswered requests for admission affirmatively establish that Park "possessed information and knowledge that the toe of the well was located beneath Plaintiffs' property prior to being designated as Operator of the well." The parties do not dispute that Park became operator of the well effective July 1, 2010, one month after the inception of Chaucer's policy. Conversely, Park's interrogatory responses establish that it first became aware that the bottom hole of the well was located beneath the Hill property after receiving an updated map in the fall of 2011, after the Chaucer policy expired. Since evidence may not be weighed and such conflicts may not be resolved on summary judgment, we agree with the Hills that the trial court erred by giving "preference" to Park's unanswered requests for admissions. Park's interrogatory responses and the requests for admission create a genuine issue of material fact concerning when Park became aware that the bottom hole of the well was beneath the Hill property.

On appeal, Chaucer maintains that its legal arguments do not hinge on Park's unanswered requests for admission. Since our review is *de novo*, we will consider Chaucer's remaining arguments and evidence to determine whether summary judgment is appropriate, despite the genuine issue of material fact created by the above-mentioned evidence.

---

[12] The Hills assert that unanswered requests for admission are not deemed admitted if the party against whom the admission is sought is controverting the matter. *See Indulge Island Grill, L.L.C. v. Island Grill, L.L.C.*, 2016-1133 (La. App. 4th Cir. 5/10/17), 220 So.3d 154, 163. We cannot say that Park's 2014 interrogatory responses evidence an intent to controvert the admissions posed in the 2015 requests for admission. However, our conclusion would be the same if the unanswered requests for admissions were disregarded. In that instance, the interrogatories establish Park's knowledge in the fall of 2011, after Chaucer's policy expired, and are sufficient to defeat Chaucer's arguments.

## Park's Knowledge: Maps, Other Evidence

Chaucer asserts that, in its interrogatory responses, Park acknowledged that, by June 2010, it was aware that others owned property within Section 93, in addition to Wilbert's Sons. Furthermore, the February 2010 map was drawn using the 1963 Tobin map, which identifies the Hills as owners. According to Chaucer, this evidence combined "demonstrates Park's knowledge of the existence and location of the Hill property, **before** it elected to become Operator of this Well." (Emphasis original.)

While Park may have generally been aware that there were other landowners in Section 93 prior to July 1, 2010, we agree with the trial court's observation that there is no evidence to demonstrate that Park knew the contents of the Tobin map, which purportedly showed the location of the Hill property. The fact that Park hired Fenstermaker and/or Mr. Collins to create an updated map does not necessarily establish that Park received any information other than the "finished product," i.e., the February 2010 map, which does not identify the Hill property.

For the same reason, Mr. Campbell's testimony is also insufficient. He simply testified that "somebody" knew the location of the bottom hole of the well in 2010 based on his interpretation of various markings on a map, which he had difficulty deciphering due to its poor quality. We cannot say this testimony conclusively establishes what *Park* knew and when, and its knowledge may not be inferred on summary judgment. Additionally, during his deposition, Mr. Campbell was unable to read the date on the map presented to him, identified as "Hill 46," until counsel advised it was dated February 10, 2010. The map attached as Exhibit O to Chaucer's motion, which is marked as "Hill 46," does not appear to be the same map that Mr. Collins identified as the February 2010 map (marked as "111"), attached to Chaucer's motion as Exhibit L. According to the Hills' expert land surveyor, "Hill 46" discussed during Mr. Campbell's deposition is dated February

2012 and reflects critical ownership information not included on the February 2010 map. In fact, in its appeal brief, Chaucer refers to the map discussed during Mr. Campbell's deposition as a "revised map," confirming that Mr. Campbell's testimony is not based on his interpretation of the February 2010 map.[13] This confusion and uncertainty concerning the exhibits and testimony further supports our conclusion that genuine issues of material fact remain concerning what Park knew and when.

**Park's Knowledge and Dishonesty: the Hills' Alleged Judicial Confessions**

Finally, Chaucer maintains that the Hills judicially confessed in their third supplemental and amended petition that their claims against Park arise out of Park's dishonesty, fraud, trespass, deceit, and concealment. Chaucer further asserts that the Hills judicially confessed that Park knew about their ownership interest in Section 93 by February 2010, citing arguments made by the Hills in their motion for summary judgment to cancel leases. We disagree.

Louisiana Civil Code article 1853 states that, "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it." A judicial admission or confession is a party's express acknowledgment of the correctness of the fact or the act charged against him by his adversary. Such a confession is designed to dispense with evidence and has the effect of withdrawing the subject matter of the confession from issue. *Scoggins v. Frederick*, 98-1814 (La. App. 1st Cir. 9/24/99), 744 So.2d 676, 682, n.12, *writ denied*, 1999-3557 (La. 3/17/00), 756 So.2d 1141. The Hills' allegations against Park concerning Park's conduct and the date of its knowledge –

---

[13] Chaucer appears to argue that Park's knowledge may be presumed because the same symbols identified by Mr. Campbell on a revised map, which mark the surface and bottom hole locations and identifies the Hill property, also appeared on the February 2010 map, which does not reflect the Hill ownership interest. Again, we cannot infer Park's knowledge based on this testimony, particularly since it appears that Mr. Campbell's testimony focused on the February 2012 revised map, and he offered no testimony comparing or connecting the February 2010 map and the revised 2012 map identified as "Hill 46."

which Park's interrogatory responses contradict – are not judicial confessions but, instead, are factual allegations that must be proven.[14]

The present situation is distinguishable from the cases cited by Chaucer, wherein this court concluded that the plaintiff was bound by the assertions made in its petition. In each of those cases, the plaintiff conceded a fact known to it, based on its personal knowledge. For instance, in *Siegen Lane Investments, L.L.C. v. Corp. Lodging Consultants, Inc.*, 2015-1426 (La. App. 1st Cir. 4/15/16), 2016 WL 1546104, *2 (unpublished), the plaintiff's petition stated that it entered a contract with the defendant, and this court rejected the plaintiff's later argument that it was unaware that a contract existed. Similarly, *see J4H, L.L.C. v. Derouen*, 2010-0319 (La. App. 1st Cir. 9/10/10), 49 So.3d 10, 12-13, wherein the plaintiffs, limited liability companies, filed a petition for injunctive relief and damages arising out of the defendant's competing business. The plaintiffs alleged in their petition and at trial that the defendant was an independent contractor based on the parties' working relationship. This court rejected the plaintiffs' attempt to revoke this admission on appeal. *Id.* at 16.[15]

Additionally, in their motion for partial summary judgment to cancel the leases, the Hills made general assertions that Park received information in February 2010 that showed the bottom hole of the well was located in the Southwest 1/4 of Section 93, and, in June 2010, Park discovered that Wilbert's Sons did not own all of the property within Section 93. Most importantly, the Hills specifically alleged that, "no later than September 26, 2011," Park "possessed actual knowledge" that the bottom hole of the well was located beneath the Hill

---

[14] For instance, the Hills' allegations against Park set forth in their third supplemental and amended petition, which Chaucer relies on, are asserted "[u]pon information and belief."

[15] A similar situation was presented in *Wells Fargo Bank, N.A. v. Settoon*, 2012-1980 (La. App. 1st Cir. 6/7/13), 120 So.3d 757, 762. In his petition for injunctive relief concerning a mortgage on immovable property, the plaintiff acknowledged that the allonge was attached to the promissory note. This fact was deemed admitted.

property.[16] These allegations further undercut Chaucer's argument that the Hills unequivocally "confessed" that Park knew, at least in part, that the Hills sustained property damage in February 2010.[17]

The trier of fact may ultimately conclude, after weighing all evidence concerning Park's knowledge and conduct, that Chaucer's coverage position has merit. However, we are not permitted to weigh evidence at the summary judgment stage. The evidence before us fails to establish, as a matter of law, that coverage is barred by either exclusion cited by Chaucer or by the primary coverage terms of its insuring agreement. Consequently, we agree with the Hills that the trial court erred by granting Chaucer's motion for summary judgment.

## CONCLUSION

For the forgoing reasons, the August 3, 2021 judgment, as amended on September 21, 2022, granting the motion for summary judgment filed by Chaucer Corporate Capital (No.2) Limited is reversed. All costs of this appeal are assessed against Chaucer Corporate Capital (No.2) Limited.

**REVERSED.**

---

[16] In their motion for partial summary judgment, the Hills sought to cancel the leases due to Park's fraudulent conduct when the leases were entered in 2012. Chaucer's policy expired in June 2011.

[17] Chaucer's assertion that the Hills may not take a position contrary to the one previously taken concerning Park's knowledge invokes the doctrine of judicial estoppel, not judicial confession. Judicial estoppel prohibits parties from deliberately changing positions according to the exigencies of the moment. The doctrine is intended to prevent the perversion of the judicial process and prevents playing fast and loose with the courts. In determining whether to apply judicial estoppel, courts look to whether (1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *Hancock Bank of Louisiana v. C & O Enterprises, LLC*, 2014-0542 (La. App. 1st Cir. 12/23/14), 168 So.3d 595, 600, *writ denied*, 2015-0621 (La. 5/22/15), 171 So.3d 251. Based on the summary judgment evidence before us, particularly the January 2016 judgment granting the Hills' motion for partial summary judgment to cancel the leases, we cannot say that the trial court previously accepted any contention by the Hills that Park had knowledge that the bottom hole of the well was located beneath their property prior to becoming operator, or that Park acted fraudulently prior to or during Chaucer's policy period. Instead, the judgment states only that the leases were cancelled due to Park's fraud. Summary judgment evidence establishes that the leases were entered in 2012, a year after Chaucer's policy expired.

14